**ABRAMS & LASTER LLP**

JOHN M. SEAMAN

20 MONTCHANIN ROAD, SUITE 200
WILMINGTON, DE 19807
MAIN: 302-778-1000
FAX: 302-778-1001

DIRECT DIAL NUMBER
302-778-1152
SEAMAN@AbramsLaster.com

July 28, 2008

**BY CM/ECF AND HAND DELIVERY**

The Honorable Gregory M. Sleet
U.S. District Court
District of Delaware
844 N. King Street
Room 4324
Lockbox 19
Wilmington, DE 19801

Re:   *Comisión Ejecutiva Hidroeléctrica del Río Lempa v. Nejapa Power Company, L.L.C.*, D. Del., 08-MC-00135-GMS

Dear Judge Sleet:

We write on behalf of defendant Nejapa Power Company, L.L.C. ("NPC") pursuant to D. Del. LR 7.2.1(b), to inform the Court that the Arbitral Tribunal presiding in the foreign proceeding, *Nejapa Power Company, L.L.C. v. Comisión Ejecutiva Hidroeléctrica del Río Lempa* (UNCITRAL), today issued its Procedural Order No. 3, which is attached as Exhibit A. Procedural Order No. 3 directly relates to NPC's pending Motion for Reconsideration of July 18, 2008 Order Granting Assistance to Litigant Pursuant to 28 U.S.C. § 1782 (the "Motion for Reconsideration") (D.I. 3), filed on July 25, 2008. Among other things, Procedural Order No. 3:

(a)   is addressed to this court when it states that although "the Arbitral Tribunal has no power to assess the jurisdiction of a foreign court in respect of evidentiary requests in aid of the arbitration… since the orders are *ex parte* and still subject to review… it is appropriate for the Arbitral Tribunal to express its views as to whether the measures sought appear … (iii) appropriate, so that the competent U.S. Courts may be able to take such views into account when reviewing their *ex parte* orders" (Order at ¶ 22);

(b)   confirms that plaintiff *Comisión Ejecutiva Hidroeléctrica del Río Lempa's* ("CEL") discovery application in this court was "filed without prior authorization of the Arbitral Tribunal" (Order at ¶ 37) and that the Arbitral Tribunal would not have authorized the discovery application had it been requested to do so. (Order at ¶ 30);

(c)   reiterates that the Arbitral Tribunal "has therefore clearly decided not to allow broadly framed requests for document production taking place prior to the first round of written submissions" (Order at ¶ 28);

{A&L-00069856-2}

The Honorable Gregory M. Sleet
July 28, 2008
Page 2

    (d)    declares that CEL's discovery application is "unwarranted in view of the parties' choice of international arbitration and the procedure established by the Arbitral Tribunal in the present proceedings" (Order at ¶ 37);

    (e)    declares that "all documents obtained through the Texas and Delaware Discovery process (if maintained) would have to be produced according to the procedural timetable, as provided by the Procedural Order n°2, and that the Arbitral Tribunal will in any event retain discretion to admit or reject any documents that are irrelevant, unreasonably burdensome to the proceedings, or in breach of the parties' rights" (*id.*);

    (f)    ordered CEL "to refrain from taking depositions of [NPC's] potential witnesses" (*id.*); and

    (g)    "[r]ecommend[ed] that the parties consult with the Arbitral Tribunal prior to resorting to any further court assistance in aid of the arbitration." *Id.*

NPC therefore respectfully submits that Procedural Order No. 3 provides additional support for the arguments set forth in its Motion for Reconsideration and asks that the Court reconsider its *ex parte* July 18, 2008 Order, vacate it, and dismiss this proceeding and/or quash the discovery sought by CEL.

We are available at the Court's convenience if Your Honor has any questions.

Respectfully submitted,

*/s/ John M. Seaman*

John M. Seaman (#3868)


JMS:smg
Enclosure
cc:    Clerk of the Court (by CM/ECF)
        Donald E. Reid, Esq. (by CM/ECF and email)
        David M. Orta, Esq. (by email)

{A&L-00069856-2}

# EXHIBIT A

{A&L-00027240-}

C M
& P

CASTALDI MOURRE & PARTNERS

AVOCATS AU BARREAU DE PARIS

Mr. Mark Baker, Esq.
Mr. Kevin O'Gorman, Esq.
Mr. Aníbal Sabater, Esq.
Fulbright & Jaworski L.L.P.
Fulbright Towers
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
U.S.A.

Fax : 00.1.713.651.5246 /Mail
Email : mbaker@fulbright.com
kogorman@fulbright.com
asabater@fulbright.com

Mr. David M. Orta, Esq.
Mr. Forrest J. Deegan, Esq.
Mr. Daniel Salinas-Serrano, Esq.
Arnold & Porter LLP
555 12th Street, NW
Washington, DC 20004-1206
U.S.A.

Fax : 001.202.942.5999 / Mail
Email : david.orta@aporter.com
forrest.deegan@aporter.com
daniel.salinas.serrano@aporter.com

Paris, July 28, 2008

*Assistant Direct Line : 01 40 73 16 45*
*Email : amourre@castaldimourre.com*

*Ref. : Nejapa Power Company, LLC vs/ Comisión Ejecutiva Hidroeléctrica del Rio Lempa (Uncitral)*

Dear Sirs,

Please find attached the Arbitral Tribunal's Procedural Order n°3.

Best regards,

Alexis Mourre

73, BOULEVARD HAUSSMANN
75008 PARIS
TEL. +33.1.40.73.16.40    MILANO    WWW.CASTALDIMOURRE.COM    PARIS
FAX. +33.1.40.73.16.44    Castaldi Mourre & Partners est une association d'avocats (Toque: R.237) au Barreau de Paris

ISO9001
WCS  UKAS
Certificate No. 3154

<u>Procedural Order n°3</u>

<u>in the UNCITRAL Arbitration
between:</u>

a) <u>Claimant:</u>

- Nejapa Power Company, L.L.C., Edificio Fusades, Blvd. Santa Elena, Antiguo Cuscatlan, La Libertad, El Salvador.

(hereinafter "Nejapa", or "the Claimant")

whose Counsel is:

Mr. Mark Baker (email: mbaker@fulbright.com), Mr. Kevin O'Gorman (email: kogorman@fulbright.com), and Mr. Aníbal Sabater (email asabater@fulbright.com), Fulbright & Jaworski L.L.P., 1301 McKinney, Suite 5100, Houston, Texas 77010-3095, (U.S.A.), Telephone: +1 713 651 5151, Fax: +1 713 651 5246.

b) <u>Respondent:</u>

- Comisión Ejecutiva Hidroeléctrica del Rio Lempa, Sección de Correspondencia (atención: Dirección Ejecutiva and Centro de Operaciones del Sistema), 9a Calle Poniente n°950, Centro de Gobierno, San Salvador, El Salvador.

(hereinafter "CEL", or "the Respondent")

whose Counsel is:

Mr. David Orta (email: david.orta@aporter.com), Mr. Forrest J. Deegan (email: forrest.deegan@aporter.com), and Mr. Daniel Salinas-Serrano (email: daniel.salinas.serrano@aporter.com), Arnold & Porter LLP, 555 12th Street, N.W., Washington, D.C. 2004-1206.

## Procedural Order n°3

### A. The Request:

1. By letter dated 17 July 2008 ("the Request"), Claimant requested that the Arbitral Tribunal issue as a matter of urgency a procedural order:

(a) Confirming that CEL's Discovery Applications were filed without the prior authorization of the Arbitral Tribunal;

(b) Declaring that CEL's Discovery Applications are incompatible with the arbitration agreement, as embodied in TCA Section 7, as well as the arbitration rules and the Swiss legal provisions applicable to this arbitration;

(c) Declaring that CEL's Discovery Applications are incompatible with the two procedural orders issued to this date by the Arbitral Tribunal;

(d) Ordering CEL to immediately withdraw its Discovery Applications, along with any other application similar in nature, effects, or character to the Discovery Applications that may have been submitted by CEL;

(e) Ordering CEL to refrain from submitting any discovery applications outside this arbitration process and/or before any court of justice anywhere in the world, without the Arbitral Tribunal's express prior approval.

### B. Facts:

2. On July 3, 2008, Respondent filed in the U.S. District Court for the District of Delaware an *ex parte* Application for an order directed against Claimant "granting discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782" ("the Delaware Application").

3. The Delaware Application requests that the court enter an order:

> "A. Granting CEL's application for discovery from NPC pursuant to 28 U.S.C. § 1782 (a);
> B. Authorizing CEL to issue the following to NPC pursuant to Fed. R. Civ. P. 45:
> (1) subpoenas for the production of documents compelling NPC to produce documents within 30 days following the service of each subpoena;
> (2) subpoenas for the deposition of NPC personnel listed in Appendix C; and

*(3) subpoenas for the production of additional documents and the taking of additional depositions as CEL may reasonably deem appropriate based upon review of documents produced and depositions given by NPC".*

4. On even date, Respondent filed in the U.S. District Court for the Southern District of Texas an *ex parte* Application for an order directed against El Paso Corporation, a non-party to the arbitration, "granting third-party discovery for use in a foreign proceeding pursuant to 28 U.S.C. § 1782" ("the Texas Application").

5. The Texas Application requests that the court enter an order:

*"A. Granting CEL's application for discovery from El Paso pursuant to 28 U.S.C. § 1782 (a);*
*B. Authorizing CEL to issue the following subpoenas to El Paso pursuant to Federal Rule of Civil Procedure 45:*
*(1) subpoenas for the production of documents compelling El Paso to produce documents within 20 days following the service of each subpoena;*
*(2) subpoenas for the deposition of El Paso personnel, including former Coastal personnel listed in Exhibit 4; and*
*(3) subpoenas for the production of additional documents and the taking of additional depositions as CEL may reasonably deem appropriate based upon review of documents produced and depositions given by El Paso".*

6. Both Applications include 34 identical requests for production of a broad list of categories of documents referring or relating to (i) the negotiation of the Final Award or the TCA, (ii) the negotiation of the TCA Amendment, (iii) the negotiation of the TCA Tax Provisions, (iv) the negotiation of the Standby Letter of Credit, (v) the potential economic value of the Final Award and/or the TCA to NPC or El Paso, (vi) the potential economic value of the TCA Amendment to NPC or El Paso, (vii) the potential economic value of the TCA Tax Provisions to NPC or El Paso, (viii) the potential economic value of the Standby Letter of Credit to NPC or El Paso, (ix) the actual economic value of the Final Award and/or the TCA to NPC or El Paso, (x) the actual economic value of the TCA Amendment to NPC or El Paso, (xi) the actual economic value of the TCA Tax Provisions to NPC or El Paso, (xii) the actual economic value of the Standby Letter of Credit to NPC or El Paso, (xiii) the reimbursement provisions of the TCA and/or Final Award that discuss the meaning, scope, intent or purpose of such provisions, (xiv) the potential value of the reimbursement provisions of the TCA and/or Final Award, (xv) the actual value of the reimbursement provisions of the TCA and/or Final Award, (xvi) the intent, purpose, scope or meaning of the TCA Amendment, (xvii) the intent, purpose, scope or

3

meaning of the TCA Tax Provisions, (xviii) the intent, purpose, scope or meaning of the Standby Letter of Credit, (xix) the commercial strategy employed by NPC relating to deviations as that term was used in the TCA and Final Award, (xx) the commercial strategy employed by NPC relating to deviations as that term is used in the TCA and Final Award, to, from or by Roberto Gonzalez, the Market Manager of NPC, (xxi) any comparisons between the economic value of the PPA to El Paso, Coastal Corporation or NPC and the economic value of the Final Award and/or TCA to El Paso, Coastal Corporation or NPC, (xxii) projections made by or on behalf of El Paso, Coastal Corporation or NPC of the actual transmission costs to be incurred by NPC or El Paso during the life of the TCA, (xxiii) the commercial strategy employed by NPC relating to deviations following expiration of the TCA, (xxiv) the liability, or the absence of liability, by NPC for the payment of taxes by NPC to any taxing authorities in El Salvador by reason of reimbursement payments received by NPC pursuant to the TCA, including, without limitation, any tax advice, legal, audit or accounting opinions received by NPC or El Paso relating to this subject, (xxv) the payment of taxes by NPC to any taxing authorities in El Salvador and due by reason of reimbursement payments received by NPC pursuant to the TCA, (xxvi) all tax advice, legal, audit or accounting opinions received by NPC referring or relating to the treatment of reimbursement payments received from CEL under the TCA in Nejapa Power Company LLC's tax returns filed in El Salvador for tax years 2002 through 2007, (xxvii) any estimates or projections of the deviations, as that term was used in the TCA ad Final Award, to be incurred by NPC during the life of the TCA, (xxviii) all communications relating to the 5 October 1998 letter from Robert Hart (President, Coastal Technology) to Guillermo Sol Bang (President, CEL), (xxix) all economic reports, analysis, forecasts or projections relating to said 5 October 1998 letter (xxx) all economic reports, analyses, forecasts or projections relating to the buy-out value of the PPA, (xxxi) all communications referring to the July 14, 2000 meeting between CEL and Coastal Corporation in Houston, (xxxii) all economic reports, analyses, forecasts or projections relating to said meeting, (xxxiii) all communications referring to the November 2001 meeting between CEL, NPC and El Paso in Miami, (xxxiv) all economic reports, analyses, forecasts or projections relating to said meeting.

7. Both Applications specify that the evidence sought is for use in the present arbitration.

8. The Texas Application was granted *ex parte* on 8 July 2008. The Delaware Application was also approved *ex parte* (Respondent letter in reply to the Request of 24 July 2008, page 6). Both Applications are subject to review by the District Courts.

4

### C. The reasons for the Request:

9. Claimant submits that "*CEL's Discovery Applications constitute a breach of (i) the arbitration agreement between the parties, (ii) the UNCITRAL Arbitration Rules, (iii) the procedural law applicable to this arbitration, and (iv) the procedural orders issued by the Arbitral Tribunal in this arbitration. CEL's Discovery Applications also constitute an impermissible attempt to "re-trade" issues which were addressed and resolved not just by this tribunal, but also in the previous UNCITRAL arbitration between the parties [...]*" (Request, page 2).

10. In respect of the request for depositions, Claimant submits that "*Astonishingly, in its Delaware Discovery Application, CEL seeks the oral deposition of Mr. Sutton, despite: (i) having extensive testimony from Mr. Sutton (including testimony on deviations and the "parties' intent") available on the record from the two previous arbitrations between the parties; and (ii) knowing that Mr. Sutton is likely to be a key Nejapa witness in this arbitration and that, consequently, CEL would have ample chance to examine him at the evidentiary hearing*" (Request, page 4).

11. Claimant further submits, in respect of the Discovery Applications, that "*nowhere in its Delaware Discovery Application does CEL discuss (i) the current status of this arbitration, (ii) the existence of a procedural schedule that allows for the production of documents and the examination of witnesses in this arbitration, (iii) the inconsistencies between the tribunal procedural orders and the discovery CEL seeks in the court, or (iv) whether the Arbitral Tribunal has authorized, or was even informed of, CEL's Delaware Discovery Application. In fact, failing to discharge its duty of transparency and candor, CEL has not disclosed to the federal court in Delaware the fact that (i) CEL's Delaware Discovery Application has never been approved by the Arbitral Tribunal and (ii) the tribunal has not allowed oral depositions or the type of broad document requests CEL is seeking from the courts*", that "*CEL's Delaware Discovery Application is accompanied by several exhibits, including transcripts from the hearing in the Previous UNCITRAL Arbitration, which have not been submitted under seal, and which are now publicly available as a matter of course to the general public*", and that "*in keeping with its strategy to hide and mislead, CEL chose not to serve or notify this tribunal or Nejapa of its Delaware Discovery Application, although CEL knows that Nejapa is represented in this arbitration by the undersigned*" (Request, page 5).

12. Claimant thus argues that: "*First, [...] Discovery in U.S. courts is not what the parties bargained for and, accordingly, constitutes a breach of the arbitration agreement. Second, CEL's Discovery Applications contravene the rulings and orders*

5

*issued by the Arbitral Tribunal in this arbitration. Third, as a general matter U.S.-style discovery is not allowed in international arbitration. Fourth, court discovery serves no meaningful purpose in this arbitration. Fifth, CEL's Discovery Applications are an impermissible attempt to re-open matters that were already decided in the Previous UNCITRAL Arbitration. Sixth, CEL's Discovery Application breaches the "equality of arms" principle that, as CEL has acknowledged, applies in every international arbitration case, including this one*" (Request, page 7).

### D. Respondent's Reply:

13. Respondent objected to the Request on 24 July 2008 ("the Reply"), by contending that "*the proceedings in the United States are completely independent from this arbitration proceeding, and there is nothing in the UNCITRAL Arbitration Rules or in this Tribunal's orders that preclude CEL from utilizing the means available to it to obtain evidence*" (Reply, pages 1 and 2). Respondent also purports that the Request is "*wholly without merit and premature in any event*", as the Arbitral Tribunal "*should not prejudge the admissibility of evidence that it has not yet had an opportunity to review*", and because "*an order by this Tribunal preventing CEL from obtaining the evidence it needs to prove its case, or prejudging whether it can utilize any evidence obtained, would severely prejudice CEL's ability to be heard and present its defence in the pending arbitration*" (Request, page 2).

14. Respondent submits that, by "*collecting and preparing the evidence for its defence and any counterclaims so that it can be in a position to submit its evidence when it files its first memorial*", it is "*availing itself of a right that it has under the federal laws of the United States to obtain evidence that it may use to aid its defence in this proceeding*" (Reply, page 2). Respondent also submits that, by doing so, it "*has not violated any orders of the Tribunal or the UNCITRAL Arbitration Rules that govern this arbitration, nor has it violated the arbitration agreement between the parties. The parties never discussed with this Tribunal what formal or informal methods the parties would utilize to obtain their evidence. The Tribunal's orders and the arbitration agreement do not speak to this issue*" (Reply, page 2).

15. Respondent further submits that "*the dispute between the parties is being resolved by the Tribunal under the UNCITRAL Arbitration Rules, which do not prohibit the use of Section 1782 to obtain evidence in aid of an UNCITRAL ad hoc arbitration*", that the measures sought in the United States will not undermine the Arbitral Tribunal's authority, as "*the U.S. courts that review Section 1782 Applications do not in any way decide any of the issues pending between the parties in the arbitration*", and as "*this Tribunal will retain the discretion to allow or disallow the use of any evidence*

*obtained*" (Reply, pages 3 and 4). Respondent further posits that "*NPC's assertion that Articles 184 and 185 of the 1991 Swiss Loi Fédérale Sur Le Droit International Privé ("SPIL") require the Tribunal's prior consent before a Section 1782 Discovery Application can be submitted to U.S. courts is erroneous*" (Reply, page 4), that "*the Tribunal does not have the authority to preclude CEL from utilizing Section 1782 to gather evidence, nor is it within the Tribunal's process to limit the evidence that CEL can seek pursuant to Section 1782. Neither the parties' arbitration agreement nor the UNCITRAL Arbitration Rules grant such authority to the Tribunal. It is the U.S. court judge who determines whether or not a 1782 Application is granted and whether a discovery request is sufficiently narrow*" (Reply, page 5).

16. Respondent also submits that the IBA Rules on the Taking of Evidence in International Arbitration ("the IBA Rules") "*encourage parties to obtain discovery outside of the arbitral process, and to only turn to the tribunal when absolutely necessary*" (Reply, page 5), that "*this Arbitration is not governed by the ICDR Guidelines, and CEL has never agreed that these guidelines should govern any aspect of this arbitration*" (Reply, page 6), and that "*the evidence CEL seeks through its Section 1782 Applications is relevant and material to the current proceeding. CEL will demonstrate as much, when and if, it offers any evidence it obtains through these proceedings as evidence in this arbitration*" (Reply, page 6).

17. Respondent finally submits that "*not only is the discovery CEL is seeking through its Section 1782 Applications appropriate, it is particularly necessary, because El Paso, one party from who CEL is seeking discovery, is not a party to this arbitration [...]. The Tribunal does not have jurisdiction or authority over a third party who may have relevant information to this arbitration*" (Reply, page 7).

18. In respect of the argument that the Applications would amount to an attempt to re-open issues already decided in previous arbitrations, Respondent submits that "*there is no mention of "deviations" in any of CEL's requests; rather they focus primarily on the intent of the parties in executing the documents at issue, an issue that, as CEL will demonstrate, is central to this arbitration*" (Reply, page 7). In respect of the argument that the Applications would place the parties on an unequal footing, Respondent objects that "*Salvadoran court-ordered discovery for use in international arbitration is possible*" (Reply, page 8).

### E. Tribunal's decision:

19. In addressing the issues so raised by the parties, the Arbitral Tribunal will have regard to certain principles relevant to international arbitrations such as this one.

7

20. First, it is generally admitted that the parties may seek court-assistance to obtain evidence, either at the place of the arbitration or at the place where an evidentiary measure is to be enforced. There is nothing in the UNCITRAL Arbitration Rules or in the IBA Rules preventing the parties from doing so.

21. However, it is also generally recognized that, once the Arbitral Tribunal is constituted, such court applications require the consent of the Arbitral Tribunal, which needs to be able to assess whether they are appropriate, notably with regard to the relevance and materiality of the evidence requested. Article 3 (8) of the IBA Rules clearly subjects court applications directed to non-parties to the Arbitral Tribunal's authorization, and the same condition logically applies to any court application directed against a party. Swiss procedural law is also to that effect, as Article 184 SPIL provides that the assistance of Swiss courts may be sought by the Arbitral Tribunal or with the consent of the Arbitral Tribunal. The Swiss authorities' quoted by Respondent also confirm that *"the entitlement to request judicial assistance lies with the Arbitral Tribunal or a party, with the Arbitral Tribunal's consent"* (M. Schneider, comment to Art. 184 SPIL, in *International Arbitration in Switzerland*, Helbing & Lichtenhahn, 58). It is certainly true that the Swiss SPIL does not deal with the conditions under which court assistance may be sought in countries other than Switzerland as the seat of the arbitration. Nevertheless, it seems reasonable to consider that, by submitting to arbitration, the parties have agreed to an alternative to litigation and, thereby, to subject evidentiary applications to the courts to the tribunal's consent, once the latter has been constituted.

22. Second, the Arbitral Tribunal has no power to assess the jurisdiction of a foreign court in respect of evidentiary requests in aid of the arbitration. In the case at hand, it is certainly up to the courts in Texas and Delaware to decide whether Section 1782 applies to a foreign arbitration, whether their orders require leave or consent from the Arbitral Tribunal, and whether the measures sought, as broad as they are, are admissible and should be granted. Nevertheless, since the orders have been granted *ex parte* and are still subject to review ("... *it is the U.S. courts that should decide such issues, not the Tribunal. NPC can bring any such complaints to the U.S. courts, and those complaints will be decided there"*, Reply, page 6), it is appropriate for the Arbitral Tribunal to express its views as to whether the measures sought appear (i) compatible with the parties' agreement to arbitrate, (ii) consistent with the procedural rules applicable to the arbitration, and (iii) appropriate, so that the competent U.S. courts may be able to take such views into account when reviewing their *ex parte* orders.

8

23. Third, the Arbitral Tribunal has the duty to protect the integrity of the arbitration by ensuring that any unauthorized court application will not unduly affect or impede the organization of the arbitration or prevent the correct application of the Arbitral Tribunal's orders. The Arbitral Tribunal also has the duty to ensure that each party be granted equal treatment in the arbitration proceedings.

24. In light of the foregoing, the Arbitral Tribunal will now address the issues in dispute.

### a) Document Discovery:

25. The discovery orders sought by Respondent in Texas and Delaware have not been authorised by the Arbitral Tribunal, and the Arbitral Tribunal has not been previously informed of Respondent's Applications.

26. However, whether broad discovery should be allowed in this arbitration is an issue that has already been addressed by the Arbitral Tribunal during the 24 June 2008 procedural hearing (by teleconference) and in the Arbitral Tribunal's letter of 3 July 2008 to the parties. During the 24 June 2008 hearing, the Arbitral Tribunal decided that requests for the production of documents should refer specifically to identified documents or narrowly circumscribed categories of documents. The Arbitral Tribunal also decided that such requests should be concentrated in one round of requests to take place after the submission of the first round of pleadings and evidence. The Arbitral Tribunal nevertheless decided, at Respondent's request, to allow limited production requests in advance of the first round of written submissions, provided that the request bore on limited number of documents that would be (i) relevant and material to the case, and (ii) indispensable for the preparation of Claimant's Statement of Claim and/or Respondent's Defence or Counterclaim. Said decisions were confirmed in the Arbitral Tribunal's letter of 3 July 2008 to the parties, in which the Tribunal stated the following:

> *"the Arbitral Tribunal already made it clear during the 24 June conference call that it wished the document production requests to be concentrated in one round of requests and objections between the two rounds of written submissions, in line with normal arbitration practice.*
>
> *While the Arbitral Tribunal understands that, under specific circumstances, it may be appropriate to allow some degree of discovery prior to filing of the parties' first written submissions, in the case at hand there does not appear to be any such particular reason to depart from the generally accepted principle that each party may request access to identified documents or class of documents after filing of the first written submissions.*

9

*Yet, at Respondent's request, the Arbitral Tribunal has accepted that each party may request the production of a limited number of documents prior to the first round of submissions. This may allow Claimant to use such documents for the preparation of its Statement of Claim, and Respondent for the preparation of its Counterclaim, if any.*

*The Arbitral Tribunal believes that authorising requests for document production after the filing of the Statement of Claim (as requested by Respondent) would lead to an inequality between the parties, as Respondent would be able to prepare its Defence and Counterclaim on the basis of documents obtained from Claimant, while Claimant would not have had the same opportunity for the Statement of Claim.*

*The Arbitral Tribunal of course appreciates that it would be conceivable to have three stages of document production requests (one before the Statement of Claim, one before the Statement of Defence and Counterclaim, and one before the second round of submissions). Yet the Arbitral Tribunal believes that such a procedure would be overly burdensome and is not justified in the case at hand.*

*Finally, the Arbitral Tribunal does not believe the proposed document production schedule would be prejudicial to Respondent, as Respondent will be able to rely on the preliminary round of document production (mainly, we assume, for the preparation of its Counterclaim), and will subsequently be able to request the production of additional documentation in advance of the filing of its second written submission".*

27. By letter of even date, Respondent communicated to the Arbitral Tribunal that it "*agrees to dispense with this limited round of production* [taking place in advance of the first submissions]", and the Arbitral Tribunal consequently issued, on 8 July 2008, its Procedural Order n°2, providing in Section B that all requests for document production should (i) be made after the first round of submissions, and (ii) refer to specific documents or narrowly circumscribed categories of documents.

28. The Arbitral Tribunal has therefore clearly decided not to allow broadly framed requests for document production taking place prior to the first round of written submissions. That decision is consistent with general practices applied in international arbitration, as reflected by the IBA Rules. This was done (i) to ensure that the document production would be focused and relevant in light of the facts of the case and the parties' arguments, as submitted in their first written submissions, and (ii) to enable the Arbitral Tribunal to decide on possible disagreements on the requests for document production in light of the parties' statements of fact and law. The Arbitral Tribunal believes that the arbitral proceedings, as currently framed, are appropriate, that they ensure that the case will be resolved in a reasonable period of time and at a reasonable cost to the parties. The Arbitral Tribunal also believes that the procedural rules, as framed in its procedural orders n°1 and n°2, ensure that the parties will be treated equally and will have a fair opportunity to state their case.

29. The Arbitral Tribunal also believes that there is nothing to indicate that this procedure will not be adequate or that it will not yield the same documents that might be available through the courts provided these are relevant and material to the disputes in this case. As far as El Paso is concerned, it is true that said company is a non-party. Yet, the requests for document discovery presented against El Paso are identical to those presented against Nejapa, and there is nothing to indicate that Respondent would not be able to obtain from Nejapa the documents sought from El Paso, so that any order directed against the latter would only become necessary once the Arbitral Tribunal had ruled on possible objections by the Claimant in respect of requests to produce pursuant to Procedural Orders n°1 and n°2.

30. In light of the foregoing, and based on the information provided so far by the parties, the Arbitral Tribunal would not have authorised Respondent to proceed with its Texas and Delaware Applications had it been requested to do so.

31. In any event, the Arbitral Tribunal confirms that all documents, including those that might be obtained through the Texas and Delaware Discovery process (if maintained), will have to be produced according to the procedural timetable provided for in Procedural Order n°2. The Arbitral Tribunal will also retain jurisdiction to admit or reject any documents which are irrelevant, unreasonably burdensome to the proceedings or in breach of the parties' rights.

32. Finally, the Arbitral Tribunal recalls that, in allocating the costs of the arbitration, it retains discretion to take account of any unnecessary costs incurred in the arbitration as a consequence of the parties' behavior.

### b) Depositions:

33. The Texas and Delaware Applications include subpoenas for the deposition of NPC and El Paso personnel, and Claimant has objected that the individuals in question (notably Mr. Sutton) are likely to be called as witnesses in the arbitration by Nejapa.

34. The Arbitral Tribunal believes that Respondent should not be allowed to take the depositions of potential Nejapa witnesses before the evidentiary hearing scheduled from 27 April to 1 May 2009.

35. As currently framed, the procedural rules established by the Arbitral Tribunal provide that each party will submit written witness statements with its first written submission, and that each party will submit the list of the witnesses it wishes to

present or cross-examine by 10 April 2009. This means that the parties will have to decide which of the other party's witnesses they wish to cross-examine on the basis of such witnesses' written statements. In the Arbitral Tribunal's view, Respondent would be placed in an advantageous position if it had the ability to undertake an examination under oath of Claimant's witnesses before the evidentiary hearing. Such a situation would affect the equality of the parties as the witnesses presented by Claimant would be bound by their depositions, while Respondent would be able to prepare its own witnesses testimony free from any such procedure, according to normal international arbitration practice.

36. Consequently, the Arbitral Tribunal believes that depositions would entail a breach of party equality in this case. The Arbitral Tribunal agrees, in this respect, with the view expressed in the ICDR Guidelines for Arbitrators Concerning Exchanges of Information that depositions are not an appropriate procedure in international arbitration.

## Decision

37. As a consequence of the foregoing, the Arbitral Tribunal:

   a) Confirms that Respondent's Discovery Applications were filed without the prior authorization of the Arbitral Tribunal;

   b) Declares that said Applications are unwarranted in view of the parties' choice of international arbitration and the procedure established by the Arbitral Tribunal in the present proceedings;

   c) Declares that all documents obtained through the Texas and Delaware Discovery process (if maintained) would have to be produced according to the procedural timetable, as provided by the Procedural Order n°2, and that the Arbitral Tribunal will in any event retain discretion to admit or reject any documents that are irrelevant, unreasonably burdensome to the proceedings, or in breach of the parties' rights;

   d) Orders Respondent to refrain from taking depositions of Claimant's potential witnesses;

   e) Recommends that the parties consult with the Arbitral Tribunal prior to resorting to any further court assistance in aid of the arbitration;

f) Rejects all other requests.

This Procedural Order is signed in five [5] original copies by the Chairman on behalf of the Arbitral Tribunal.

Date: 28 July 2008